SARAH E. MONTGOMERY ET AL. *v.* RICHARD T. McPHERSON.

WILLS.    *Construction.    Estate devised.   "Also."   Meaning of.    Life estate.*
. . . A will giving to testator's wife "all of my H. place, . . . also
        all of my stock that I may have at my demise after her demise
        to go to" another and her heirs, gave the wife a mere life estate
        in the H. place, as well as in the stock.

FROM the chancery court of Adams county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

McPherson, the appellee, was complainant in the court below;
Mrs. Montgomery and others, the appellants, were defendants
there.   From a decree in complainants favor, the defendants ap-
pealed to the supreme court.   The opinion of the court fully
states the facts of the case.

*A. H. Geisenberger,* and *Ratcliff & Clinton,* for appellants.

The appellee in the court below relied almost entirely upon
the case of *Sherman* v. *Wooster,* 26 Iowa, 272, as cited in the
notes to the article "Also" in Am. & Eng. Enc. Law (2d ed.),
178, and the chancellor in deciding the demurrer seemed also
to base his conclusion largely upon that case.   The full text of
the opinion in the case of *Sherman* v. *Wooster* was not accessi-
ble in Natchez, at the time of the trial, and it has only been
since the decision of the chancellor that the opinion of the court
in that cause has been received.

From a careful reading of the opinion, and the reasoning of
the majority of the court in that cause, it will be evident that
the case really is an argument in favor of the contention of the
appellants in this cause, rather than in favor of the appellee. As
will be seen, the opinion of Wright, J., turns almost entirely
upon the language of the will then being construed, which
pointed out to his mind that the intention of the testator was,

*as shown by the last words of the clause* then under consideration, to leave his wife one-half of the real estate, and the one-half of the real estate to his two daughters.

The law books everywhere construe the word "also" in the way that the appellants say is the proper construction to be given in the case at bar, unless there be some words in the instrument being construed which show that the intention was different.

In Cyc. the word "also" is defined as follows, as will be seen by reference to vol. 2, p. 136: "Likewise—In the same or like manner; in addition; besides; too; also used as a copulative conjunction, denoting nearly the same as the word *'and.'* " And an array of decisions is cited to support the various definitions given.

Defining the word according to any of the meanings given in Cyc., the construction of the clause will be exactly as contended for by us. If you say, "I give my William Holmes place, likewise my stock," or "my William Holmes place, in the same or like manner my stock," or "my Holmes place, in addition my stock," or "my place besides my stock," or "my William Holmes place and my stock"—in every instance the will means that you give your place and the stock to be held as one, in the same manner and with the same title.

So, also, the definition given to "also" in Am. & Eng. Ency. Law (2d ed.), 177: "The words 'also' or 'and also' are usually read in wills as copulative, carrying on the sense of the preceding words, and being equivalent to 'in like manner.' In this sense, the conditions attaching to the preceding disposition of property attach also to the succeeding, or *vice versa.*"

*S. L. Cockroft, Benj. L. Capell,* and *Reed & Brandon,* for appellee.

The word "also" has been construed variously by the different courts to mean "in like manner;" "further;" "in addition to;" "too." See 2 Am. & Eng. Ency. Law (2d ed.), 177.

The word implies something in addition to what has gone before. *McCurdy* v. *Alpha Min. Co.,* 3 Nev., 37; *Dalton* v. *Bowher,* 8 Nev., 191; *Panton* v. *Teft,* 22 Ill., 367–375.

The supreme court of North Carolina, in speaking of the word "also," in the case of *Rollins* v. *Henderson,* 90 N. C., 273, says: "Referring to the word 'also' as here employed, a copulative conjunction connecting the two clauses, and it implies 'likewise,' 'in like manner,' 'in addition to'—denoting addition or conjunction."

The supreme court of Illinois, in the case of *Panton* v. *Teft,* pp. 375, 376, says, speaking of the word "also" between two clauses used in a deed: "We do not see by what rule of interpretation these two clauses shall be construed as meaning the same thing, or the latter as qualifying, restricting, or explaining the first. The word 'also' is never employed to confine or limit what has already been said, but is used to denote that something else is added to what precedes it."

The supreme court of Nevada, in the case of *McCurdy* v. *The Alpha Gold and Silver Mining Company,* in speaking of the word "also" when used in a deed, says: "The word 'also' necessarily implies that something is conveyed in addition to that described in the preceding sentence." And, further, in the same opinion, the court says: "The word 'also' evidently implies something in addition to what has gone before."

The supreme court of Nevada, in another case, *Dalton* v. *Bowher,* on p. 201, says: "Legal decisions give to the word 'also' the same meaning, and fully support the views herein expressed," citing the above case of *McCurdy* v. *The Alpha Gold and Silver Mining Company,* 3 Nev., 37. And it further says that "the word 'also' certainly implies something in addition to what has gone before," and refers to the case of *Panton* v. *Teft,* and approves the holding in that case.

The supreme court of the state of Maine, in the case of *Loring* v. *Hays,* 86 Me., 351, says: "A testator bequeathed and devised certain articles of personal property and a pew in a meet-

inghouse to his wife for life, and in the same clause made a further bequest, using the following language: 'I also give and bequeath to my said wife, Betsy Loring, $4,500, to be paid to her in cash or in such personal securities as she may select from my estate.' Held that, by this language, a testator made an absolute gift to his wife of the sum of $4,500, and that the meaning of the word 'also' in this connection is 'in addition to,' rather than 'in like manner.' "

The supreme court of New Jersey, in the case of *Woolby* v. *Osborne*, 39 N. J. Eq. Rep., 53, 54, says: "Had he (testator) intended to give his wife the nine acres for her widowhood only, he would not have mentioned it specially. He not only makes particular mention of it, but describes it so as to identify it positively. The gift of that lot is unqualified, while the gift of the 'remainder' is only for her widowhood."

The will which was under consideration by the court in the above case for construction is as follows: "I give and bequeath to my dear, beloved wife, Rachael, about nine acres that are about south of Ed P. Marcellus' land, called the New Lane, and also all of my movable personal property to be left to discharge my debts, and so much of my real property to discharge the remainder of my debts, if any wanting, and the remainder of my property, of what nature soever, during her widowhood. I give and bequeath to my daughter, Katie, the one equal one-fifth of the remainder, and the rest to my two sons, John and George, equally, share and share alike." .

A case has been decided by the supreme court of this state somewhat in point, and, perhaps, may have some bearing in construing the will involved in this lawsuit. We refer to the case of *Carroll* v. *Botsai*, 65 Miss., 350. The will for construction in that case is as follows: "I bequeath to my wife my lot in the city of Natchez, on Commerce street (property fully described), and I also bequeath to my beloved wife all of my lands known as the Prospect Hill plantation. This bequest is subject to a legacy of M. J. of $300 per annum."

The court said in this case that such a legacy is not a charge on the lot in the city of Natchez, but only a charge upon the Prospect Hill plantation and the personal property situated thereon.

Calhoon, J., delivered the opinion of the court.

The following is a precise reproduction of the will of S. S. Reeves, deceased. The original in the record appears precisely as this does, including the punctuation, with the pertinent parts italicized:

"Last Will and Testament of S. S. Reeves, Deceased.

"State of Mississippi

"Adams County June

"The 2nd. 1899.

"I Stephen Stapleton Reeves, being in good health and sound mind do make my last will and testament I will desire that all of my just debts be paid. I will and bequeath *to my wife Lelia A. Reeves all of my Wm. Holmes place,* South and West of the public road leading from Thomas T. Rollins to Sandy Creek containing about fifteen hundred acres *also all of my stock* that I may have at my demise *after her demise to go to Sallie E. Montgomery and her bodily heirs* I also give and bequeath to Sallie E. Montgomery my Apple Grove plantation known as the *Carter place* containing four hundred and eighty Acres to have *during her natural life then to be divided equally among her children.* I will and bequeath to my grandson Hansford Montgomery and Albert Reeves my *Slocomb place* in Franklin county containing Six hundred and six acres this includes the Delton Foster place &c to have and to hold *during their natural life* and then to be equally divided between Hansford Children if any if not to go to *Sallie E. Montgomerys Children* I also desire that *all of my lands be sold* and the proceeds *equally divided between my wife* Lelia A. Reeves and Sallie E. Montgomery and her children to be sold as they think best I appoint

my daughter Sallie E. Montgomery and my wife Lelia A. Reeves Executors of my will without bond."

After Reeves died, his wife, one of the donees of his will, married one Havard, and these two conveyed, for value, to appellee, certain white oak timber on the Wm. Holmes place. Subsequently these two, joined by Mrs. Sallie E. Montgomery (*nee* Reeves) and her husband, conveyed this timber to appellant Spraggins, who conveyed it to appellant Tigrett. Appellee, McPherson, filed his bill against Sallie E. Montgomery, her husband and her children, Mrs. Havard and her husband, Spraggins and Tigrett, setting up these facts, to remove this cloud from his title, and for injunction to restrain the cutting of the white oak timber. Appellants demurred on the ground that the will gave the widow a life estate only, with remainder to the daughter, Sallie E. Montgomery, and her bodily heirs. This demurrer was overruled, and appellants, declining to plead further, appeal to this court. So the whole and sole question *is* whether the widow took the Holmes place in fee simple or only for her life, under the will, and this depends on the meaning of the word "also" in the second clause.

The decree below was, no doubt, based on *Sherman* v. *Wooster,* 26 Ia., 272. We cannot subscribe to the conclusion reached in that case, in which Dillon, C. J., dissented. After examining 2 Am. & Eng. Ency. Law, 177, and notes; 2 Cyc., 136, and notes; *Evans* v. *Knorr,* 4 Rawle (Pa.), 66–69; *Noble* v. *Ayers,* 61 Ohio St., 491 (56 N. E., 199); *Hyman* v. *Williams,* 34 N. C., 92; *Morrison* v. *Schorr,* 197 Ill., 554, 565 (64 N. E., 545); *Morgan* v. *Morgan,* 41 N. J. Eq., 235–237 (3 Atl., 63)—which last case condemns the conclusion of the majority in *Sherman* v. *Wooster, supra,* in express terms—we conclude that the will in the record before us, by its second clause, gave the widow a life estate only in both the Holmes place and the stock.

*Reversed, and decree here sustaining the demurrer and dismissing the bill.*