## McLAUGHLIN, Ex'r, et al. v. YINGLING et al.

No. 12103—Opinion Filed Feb. 13, 1923.

Rehearing Denied March 20, 1923.

Application to File Second Rehearing Denied July 3, 1923.

(Syllabus.)

1. **Appeal and Error—Review of Equity Case—Findings—Evidence.**

In a case purely of equitable cognizance, the findings of fact by the trial court will not be disturbed by this court unless the same are clearly against the weight of the evidence.

2. **Wills — Validity — Perpetuity.**

Section 32, art. 2. of the Constitution of Oklahoma provides that, "Perpetuities are contrary to the genius of a free government and shall never be allowed."

3. **Same—"Conditions Precedent."**

Section 8410, Revised Laws 1910, providing that a condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. is declaratory of the rule at common law. And

in order that a vested share, which is not come into possession until a future time, shall escape the consequences of the rule against perpetuities, the vesting must be indefeasible. And where in a will an intermediate gift, a life estate to the wife, a child by another woman and its mother, is carved out, with a gift over to a particular class, the nephews and nieces of the testator and his wife, the limitation will embrace not only the nephews and nieces living at the death of the testator, but all such who shall subsequently come into existence before the period of distribution.

**4. Same—Husband and Wife—Limitation of Bequests.**

Under section 8341, Revised Laws 1910, husband and wife, while married, each becomes the forced heir of the other to the extent of one-third of the property owned by each, respectively, which interest cannot be bequeathed by the owner from said heir, and where the property is real estate, the real estate of the owner therein is meant, whether it be the fee or a lesser estate.

**5. Same—Judgment—Affirmance.**

Record examined, and held, no reversible error appearing in the record, that the judgment of the trial court should in all things be affirmed. And it is so ordered.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Actions between Agnes M. Yingling and others and Jones A. McLaughlin, Executor of the estate of Frank Yingling, Jr., deceased, and others to determine validity of will. Judgment for Agnes M. Yingling and others, and McLaughlin and others bring error. Affirmed.

Pomerene, Ambler & Pomerene and Thurman S. Hurst, for plaintiffs in error.

McCollum & McCollum and J. F. McKeel, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Pawnee county; Honorable Redmond S. Cole, Judge.

The record discloses that there are two appeals from the county court and one original suit filed in the district court of Pawnee county, which were consolidated under No. 4616 in the district court. In cause No. 4616, Agnes Yingling, the widow, sued James A. McLaughlin, executor, and all of the other parties to this suit in the district court of Pawnee county, Okla., and in her petition sets out, in substance, that at the time of the death of Frank Yingling, Jr., his home and domicile were at Pawnee, Okla.; that plaintiff is the widow of testator; that he died leaving a will; that the estate is being administered upon in the

county court of Pawnee county, Okla., where it is located, and setting out a description of a part of the real estate located in Pawnee county and alleging that Pawnee county is the center of the body of the estate of deceased, the place from which he worked during his lifetime, in which and from which he accumulated and assembled a large estate, which consists of various pieces of real estate in Osage and Haskell counties, bank stock, live stock, and other personal property in Pawnee county and various sums of money on deposit in various banks in the state of Oklahoma; that said purported will had been admitted to probate in both the probate court of Stark county, Ohio, and the county court, Pawnee county, Okla., and setting out paragraph 8 of the said will, which provides that if the daughter of deceased, Frances Catherine Yingling, shall die without issue, the testator gives the residue of his estate to the children of his brothers and sisters and the children of the brothers and sisters of his wife, but states further: "This bequest to take effect only under the circumstances named and not to take effect until the youngest of my nieces and nephews arrive at the age of 22 years"; that James A. McLaughlin has been appointed executor of the estate by the county court of Pawnee county, Okla., and by the probate court of Stark county, Ohio; that Ronald Miller and Russell Miller are named in said will as alternative executors or executors to succeed the said James A. McLaughlin when they become of age, and that they have both become of age; that Emma Miller is mentioned as a legatee in said will and is the mother of Ronald Miller and Russell Miller and Frances Catherine Yingling, who is mentioned in the will as beneficiary and a daughter of deceased, and sets out a list of the brothers and sisters of decedent and the brothers and sisters of Agnes M. Yingling, and the said parties claim some interest in the estate by reason of paragraph 8 of the will, but alleging that they have no interest, and alleges that they should be required to come into court and set up whatever claim they may contend for; and that said paragraph 8 attempts to create a trust which is void for the reason that it is contrary to the statutes of Oklahoma; that it violates the rule against perpetuities; that it is an empty passive trust and not an active trust, and that it is useless because there is nothing for it to do or perform; that the bequest over to the nieces and nephews of the deceased is void, as it offends the rule against perpetuities; that the object and purpose of the attempted trust is to hold

intact and together the estate until the youngest of the testator's nieces and nephews arrives at the age of 22 years; that this carries the vesting of the corpus of the estate beyond a prohibited period and renders the bequest void; that the attempted trust cannot, as a matter of law, hold the estate in its entirety to the time named in the purported will and there is nothing left for the trust to accomplish; that it is void for uncertainty, remoteness, and incapable of being executed; that in order to fulfill the object and purpose of the trust it would have to run over into the prohibited period as limited by the rule against perpetuities; that the attempted trust violates every reason and principle of justice, and if carried out, would work gross wrong and injustice to the plaintiff. That for said reasons the defendants have no interest in the estate and should be estopped from setting up or claiming any right, title, or interest in or to any of the property of the estate of deceased. Plaintiff admits that Frances Catherine Yingling is the child of Frank Yingling, Jr., deceased, and as such is entitled to inherit as an heir at law, and that there are no other heirs at law than plaintiff and Frances Catherine. The prayer is that the attempted trust set forth in the will be declared null and void and of no force or effect and that defendants be forever barred from setting up any right, title, or interest in or to any of the property either real or personal constituting the estate, except as to Frances Catherine Yingling, who is admitted to be the child of deceased and a rightful heir at law, and that the estate be decreed to be the property of the plaintiff and Frances Catherine as the sole and only heir of Frank Yingling, deceased.

Service by publication was had on all the parties defendant, except James A. McLaughlin, on whom personal service was had. McLaughlin demurred to this petition on the ground that the court had no jurisdiction of the person of the defendants or the subject of the action, and that there was another action pending between the same parties for the same cause; that there was a defect of parties defendant and that petition does not state facts sufficient to constitute a cause of action.

Ida Hostler and Mary Dulabahm filed answer and cross-petition in substance as follows: (1) General demurrer. (2) Admitting that Frank Yingling, Jr., died March 5, 1919, at Pawnee, Okla., and that plaintiff is the widow, and that prior to his death, on the 6th day of July, 1909, he made, executed, and published his last will and testament, a true copy of which is attached to plaintiff's petition as "Exhibit A," and that at the time of his death he owned real estate situated in Pawnee county, Okla., and that he owned real estate in Osage and Haskell counties, Okla., and that he owned bank stock, live stock, and various sums of money on deposit in various banks in the state of Oklahoma, and that a will had been admitted to probate in Stark county, Ohio, and Pawnee county, Okla., and McLaughlin appointed executor by both courts; that Frances Catherine is the daughter of Frank Yingling, Jr., deceased, and Frank Yingling, Sr., is the father of deceased and is now living, and that the mother of deceased is dead; and denying that the domicile of Frank Yingling, Jr., was in Pawnee when he died or at any other time, but alleging that it was in Stark county, Ohio; alleging that the will had been admitted to probate in Stark county, Ohio, as a domestic will, that the plaintiff is the widow and heir of Frank Yingling, that she and Emma Miller and Frances Catherine Yingling are named as beneficiaries under the last will and testament of Frank Yingling, Jr., deceased; that Ronald and Russell Miller are named in said will as contingent executors and Ronald Miller is deceased, setting out a list of the brothers and sisters of the deceased and of the plaintiff, and a list of the names of their children; and setting out and listing the minors among said children and asserting that all of said parties are interested parties under the will; that both the county court of Pawnee county, Okla., and the probate court of Stark county, Ohio, had admitted said will to probate in each of said counties and found the testator to be domiciled at the time of his death in their respective jurisdictions and are claiming and exercising primary jurisdiction in the administering of said estate, neither admitting the right of the other, except upon the real estate within the other's jurisdiction. That the county court of Pawnee county against the objection of the executor had entirely disregarded the will and construed it to be inoperative and ordered the distribution of $16,000 of the assets of said estate to Agnes Yingling and Frances Catherine Yingling in equal parts. That included in said $16,000 was an item of $11,643.43, which was not and never had been in the jurisdiction of said court or within the state of Oklahoma, but was at the time of testator's death on deposit at a bank in Vicksburg, Miss. That after the payment of the debts there will be funds of the estate to be distributed in

Stark county, Ohio, and Pawnee county, Okla.; that the above facts show a conflict of jurisdiction between the probate court of Stark county, Ohio, and the county court of Pawnee county, Okla., and that a determination of the true place of domicile of Frank Yingling, Jr., at the time of his death by a court of competent jurisdiction having full equity powers is necessary to the proper administration of said estate; and the defendants again allege that Massillon, Stark county, Ohio, was the true place of domicile of Frank Yingling, Jr., at the time of his death, and his will must be construed by the courts of his domicile and in accordance with the laws of the state of Ohio, and said sum of $11,643.43 is a part of his estate to be administered by the probate court of Stark county, Ohio, and that the said defendants are in doubt as to the construction of the will, and especially as to the trust provision for annuities and payments or items of the will, and pray the judgment and direction of the court regarding the trust estate and the property to be administered and the rights of the parties in interest, and propounded to the court the following questions: Do said 2d and 9th paragraphs constitute a valid and enforceable trust in said executor to hold said estate in trust for the payment of the bequest and annuities therein provided for until the death of Frances Catherine Yingling? If so, does the beneficial interest in the remainder of said estate upon the death of Frances Catherine without issue pass to the heirs of Frances Catherine, deceased, as intestate property, or does it pass to the children of decedent's brothers and sisters and the children of the brothers and sisters of Agnes M. Yingling in accordance with the provisions of said will? And setting up that an action for the determination of said matters had been filed in the court of common pleas, Stark county, Ohio, and asking that this proceeding await the determination of that action.

The defendant James A. McLaughlin filed his answer, in which he raises some of the same issues raised by the other defendants. A guardian ad litem was appointed for the minor defendants and filed answer for them. The defendant James A. McLaughlin, on April 29, 1920, filed a supplemental answer, setting out the judgment of the court of common pleas of Stark county, Ohio, determining all matters which he said in his answer above set out should be determined. On the same date Ida Hostler and Mary Dulabahm filed supplemental answer and cross-petition setting out also the judgment rendered by the court of common

pleas of Stark county, Ohio. This judgment was entitled James A. McLaughlin, Executor by Appointment of the Probate Court of Stark County, Ohio, v. James A. McLaughlin, Executor by Appointment of the County Court of Pawnee County, Okla., et al. On the same day, by the permission of the court, the plaintiff filed reply to the answer of Ida Hostler and Mary Dulabahm and James A. McLaughlin, executor.

This reply of the plaintiff is quite lengthy, and denies specifically the allegations of the answer of the defendants, and contains affirmative allegations of fraud on the part of the cross executor, James A. McLaughlin, and charges him with the mismanagement of the estate and with designingly seeking to obtain control of the same for his own use and benefit, and with fraudulently seeking to deprive the county court of Pawnee county, Okla., of jurisdiction over the bulk of the estate and to confer such jurisdiction on the probate court of Stark county, Ohio, and to have the will construed by the court of common pleas of Stark county, Ohio. And alleges that such suit was instituted for the sole and only purpose of creating an apparent conflict of jurisdiction and for the purpose of practicing fraud upon the district court of Pawnee county by alleging and attempting to prove such pretended judgment, when in fact the judgment was not obtained by suit instituted in good faith, but for the sole and only purpose of attempting to carry out the purpose and designs of the said James A. McLaughlin in administering said estate for his own use and benefit and at the expense, cost, and impoverishment of this plaintiff.

On the same day, Russell Miller, Emma Miller, and Frances Catherine Yingling, by permission of the court, filed an answer adopting the petition of the plaintiff. On the same day, the guardian ad litem for all the minors filed answer. Such are the issues in case No. 4616.

The will of Frank Yingling, Jr., which was probated, as hereinbefore set forth, and which was under construction by the trial court, is as follows:

#### "Will.

"The State of Texas, County of Cherokee.

"Know all men by these presents, that I, Frank Yingling, Jr., of Massilon, Ohio, temporarily in the town of Jacksonville, Cherokee county, Texas, being of good health and of sound mine and disposing memory, do make and publish this my last will and testament, hereby revoking all wills by me at any time heretofore made.

"First: I direct that all my just debts shall be paid.

"Second: It is my will that my beloved wife Mary Agnes Yingling shall at all times be provided with a comfortable home and if she does not own a home in her own name at the time of my death, then and in that event she shall have first choice of any residence property belonging to my estate. I also will and bequeath to my said wife an allowance of twenty-five dollars per week, during her life including the amount of insurance received by her on my life policy, that is to say that when the insurance money is exhausted at the rate of twenty-five dollars per week, payment is to begin from my estate at the rate of twenty-five dollars per week, and in all cases of prolonged sickness the allowance to be increased to thirty dollars per week during such sickness. All of said bequest to be in lieu of dower.

"Third: I will and bequeath to Mrs. Emma Miller of Durant, Oklahoma, formerly of Eldorado, Kansas, the free use of any residence property belonging to my estate during her natural life, her choice to be second to that of my said wife and she shall hold said property free of rent. I also will and bequeath to the said Mrs. Emma Miller an allowance of fifty dollars per month, to be paid to her monthly by the executor of this my last will, for the support and maintenance of Frances Catherine, the daughter of myself and the said Mrs. Emma Miller, and if other children are born to myself and the said Mrs. Emma Miller, then and in that event an additional allowance of ten dollars per month for each such birth shall be paid by my executor monthly to the said Mrs. Emma Miller, provided, however, that if the said Mrs. Emma Miller shall own a home at the time of my death, fully paid for, then and in that event she is not to be furnished with such free home from my estate.

"Fourth: I will and bequeath to my said daughter, Frances Catherine, the sum of two hundred and fifty dollars per year, from the time she enters college until she graduates, limited to not to exceed four years.

"Fifth: I will and bequeath to my said daughter Frances Catherine, an allowance as follows: If she has graduated when she arrives at the age of twenty-one years then she shall have an allowance of one hundred dollars per year, and if at that time my said wife and Mrs. Emma Miller have both departed this life, then the allowance shall be increased to five hundred dollars per year, from and after my said daughter reaches her twenty-fifth birthday, and if no other children are born to myself and the said Mrs. Emma Miller, the allowance to my said daughter shall be increased to one thousand dollars per year. Provided that if other children are born to myself and the said Mrs. Emma Miller,

the same provision shall be made for their education as is herein provided for our said daughter, Frances Catherine.

"Sixth: My will and desire is, that if other children are born to myself and the said Mrs. Emma Miller, in addition to allowance already made for such event, that when the youngest of said children arrives at the age of twenty-two years, that each shall receive an allowance of five hundred dollars per year, provided, that my said wife and the said Mrs. Emma Miller are neither then living.

"Seventh: Any of my estate may be sold by the executor to carry out the various bequeaths herein named.

"Eighth: In the event that my said daughter Frances Catherine should die without issue and no other children should be born to myself and the said Mrs. Emma Miller, or in the event other children should be born to us the said Mrs. Emma Miller and myself and afterwards die without issue and all the children of myself and the said Mrs. Emma Miller have died without issue and there still remains a remnant of my estate, I will and bequeath the same to the children of my brothers and sisters and the children of the brothers and sisters of my wife, adopted children and step-children not included in this bequest. This bequest to take effect only under the circumstances named and not to take effect until the youngest of my nephews and nieces arrive at the age of twenty-two years.

"Ninth: I constitute and appoint J. A. McLaughlin of Massillon, Ohio, executor of this my last will, conditioned that he will give bond in some good surety company in an amount equal to the actual value of my estate. And it is my desire that he enter upon the discharge of the duties of such executor as soon as he qualifies and my said will is legally probated, and continue to act as such executor until Russell Miller of Durant, Oklahoma, arrives at the age of twenty-one years. I name and constitute the said Russell Miller to succeed the said J. A. McLaughlin as executor of this my last will when he the said Russell Miller arrives at the age of twenty-one years and gives bond in some good surety company for the full value of my estate at that time and when Ronald Miller, brother of the said Russell Miller arrives at the age of twenty-one years, it is my will and desire that he give the requested bond and be qualified as the co-executor with his brother the said Russell Miller.

"In witness whereof, have hereunto set my hand this 6th day of July A. D. 1909, in the presence of C. H. Martin and J. M. Brittain, who attest the same at my request.

"Frank Yingling, Jr.

"The foregoing instrument was subscribed by Frank Yingling, the testator, in our presence, and we, at his request and in his

presence, sign our names hereto as attesting witnesses.

"O. H. Martin,
"J M. Brittain."

On the 4th day of June, 1919, a hearing was had by the county court of Pawnee county, Okla., on said petition of Agnes M. Yingling for appointment as administratrix. James A. McLaughlin and Frances Catherine Yingling, by their attorneys, resisted said petition, and evidence was taken as to the place of domicile of the deceased at the time of his death, and at the close of the hearing the county court held that the place of domicile was in Pawnee county. The next day an agreement was entered into between the parties represented whereby they agreed to suspend litigation in order to preserve the estate, and agreed that in view of the holding of the court the will be admitted to probate and James A. McLaughlin appointed executor.

On June 18, 1919, the said James A. McLaughlin filed in the county court of Pawnee county, Okla., a duly exemplified copy of the probate of said second will by the probate court of Stark county, Ohio, together with his petition for the probate thereof. On July 7, 1919, the county court of Pawnee county admitted said will to probate as a domestic will and appointed James A. McLaughlin executor of said estate.

During the month of December, 1919, which was after the time for filing claims had expired, the said Agnes M. Yingling filed her petition in the county court of Pawnee county to construe said will, and asked that it be declared invalid for the reason that it attempted to convey away from the widow more than two-thirds of the estate, that it violated the rule of perpetuities, and that it offended against good morals; and a second petition asking for partial distribution of said estate for the same reasons; and Frances Catherine Yingling also filed a petition for partial distribution for the same reasons.

In his inventory and appraisement filed August 18, 1919, and in his account filed December 29, 1919, the said James A. McLaughlin listed as assets of the said estate in the county court of Pawnee county, the said sum of $11,643.43 that was on deposit in Vicksburg, Miss., at the time of the death of Frank Yingling, Jr. On January 10, 1920, the said James A. McLaughlin filed in the county court of Pawnee county a motion to correct said inventory and account by striking therefrom the said item of $11,-643.43, for the reason that the domicile of

the deceased was in fact in Ohio and it should be listed there and not in Oklahoma.

On January 10, 1920, the said petitions of Agnes M. Yingling and Frances Catherine Yingling to construe said will and to make partial distribution of said estate, and said motion of James A. McLaughlin to correct said inventory and account, came on for hearing before the county court of Pawnee county, and the county court entered an order on the 13th day of January, 1920, declaring said will invalid and inoperative for the reasons stated in said petitions of Agnes M. Yingling and Frances Catherine Yingling, and another order denying the motion of the said James A. McLaughlin to correct said inventory and account. On January 16, 1920, the said James A. McLaughlin duly filed a notice of appeal from both of said orders and transcript of said appeal was filed in the district court of Pawnee county, and docketed as cause No. 4650.

After said appeal was taken, the said Russell Miller filed in the county court of Pawnee county his petition for letters testamentary, and on February 26, 1920, an order was entered appointing said Russell Miller as executor and discharging said James A. McLaughlin, and requiring said James A. McLaughlin to pay and turn over to said Russell Miller all monies and property in his hands as such executor. On March 3, 1920, the said James A. McLaughlin duly filed his notice of appeal from said order and the transcript was filed in the district court of Pawnee county and docketed as cause No. 4657.

The record discloses that the testator, Frank Yingling, deceased, during his lifetime acknowledged Frances Catherine as his child in writing, which is as follows:

"The New Commercial.

"A. B. Dreyfus, Proprietor.

"Two Good Sample Rooms.

"Saint Paul, Nebraska,
"Feb. 17, 1907.

"Mr. J. A. McLaughlin, Lawyer,
"Massillon, O.

"Dear Sir:

"I have a day or two ago received the glad news that one Emma Miller of whom I made mention in my will drawn by you, that she on Feb. 11th, 1907, gave birth to a pair of twins, one boy and one girl. This is to advise you that in case I do not live to see you again I acknowledge them to be my children, begotten out of marriage, and I hereby own them to be my legal heirs, and should my wife or my father or mother or any of my half-brothers or half-

sisters or any one else concerned, to try and break my will now in your hands. I hereby direct you and employ you as my attorney to look to the interest of my dear children and the interest of their mother, Mrs. Emma Miller, in full accordance with my **will**. I however reserve the right to have Mrs. Emma Miller to employ such additional legal help if it may become necessary as you and her may agreed upon to better protect the interest of my children and her own. Trusting you may keep same strictly a secret with yourself. * * *"

The other beneficiaries under the will in controversy seem to concede Frances Catherine's right to inherit under the statute, and make no contention to the contrary.

The trial court, after suming up the facts, made specific findings of facts and conclusions of law, among which are the following:

"From all the above and foregoing facts the court finds that Massillon, Stark county, Ohio, was not the home or domicile of testator at the time of his death, and the court finds that Pawnee, Pawnee county, Okla., was the home and domicile of Frank Yingling, Jr., deceased, at the time of his death on March 5, 1919. The court further finds that the domicile of the wife follows that of the husband, and that the domicile of the plaintiff, Agnes Yingling, at the time of the death of Frank Yingling, Jr., deceased, was at Pawnee in Pawnee county, Okla., and that she rented out the home and premises where she had previously resided for a part of the time in Massillon, Ohio, and came to Pawnee on or about September, 1918, and continuously resided in Pawnee up to the time of the death of her husband, and that she returned to Massillon with his remains after his death, and that she remained in Massillon with relatives and friends until the following June or July, when she returned to Pawnee, Okla., where she has resided ever since and now resides. And the court finds that the said plaintiff was not residing in Massillon, Stark county, Ohio, in January, 1920, and had not resided there for approximately a year and a half and had not had her home or domicile there for many years, and the court finds that the pretended service of summons on her by leaving the same at her alleged place of residence in the case of McLaughlin versus McLaughlin, brought in the court of common pleas in Stark county, Ohio, was null and void and conferred no jurisdiction whatever on said court of common pleas in Stark county, Ohio; said court had no jurisdiction to render a personal judgment against the plaintiff in this case by reason of said service. The court finds further that in attempting to procure service on the plaintiff herein in that case that the plaintiff, James A. McLaughlin, executor, made oath that the plaintiff herein, Agnes Yingling, was a nonresident of the state of Ohio, and that service of summons cannot be had upon her in said state, and the court finds that said affidavit was true. And the court finds that whatever time the said Agnes Yingling has spent in Ohio for the last few years was spent there at the instance and request of the testator for the purpose as above stated, of keeping her from coming in contact with said paramour, and that the fact that she spent some time in the state of Ohio, never did constitute that state her home. The court further finds that there was no service had or claimed to have been had in said court of common pleas in Stark county, Ohio, on the defendants, Russell Miller, Frances Catherine Yingling, or Emma Miller other than by publication, and the court finds that said service was wholly insufficient for the purpose of binding said defendants personally by any decree of said court. The court further finds that said cause in the court of Stark county, Ohio, was instituted by James A. McLaughlin, executor, by appointment of the probate court of Stark county, Ohio, against himself as executor by appointment of the county court of Pawnee county, state of Oklahoma, and the court finds that the said McLaughlin failed to employ counsel for himself as defendant, failed to have any answer or other pleading filed for himself as defendant, failed to introduce any evidence on behalf of himself as defendant, and failed in any way whatever to defend himself, but that he as plaintiff prosecuted himself as defendant with all possible vigor and that he allowed said case against himself as defendant to go by default. And the court finds that said judgment was fraudulent and void and is without force or effect, and that said cause was brought and maintained in bad faith after the same question had been decided by the county court of Pawnee county, Okla., and after this suit had been instituted, and after service had been had upon the said James A. McLaughlin, executor, herein, and that the object and purpose of bringing and maintaining said action as set forth in the court of common pleas of Stark county, Ohio, was for fraudulent purpose and with the fraudulent and corrupt design of procuring a pretended judgment to be plead and offered in evidence in this case for the purpose of controlling the judgment of this court without ever having a real trial of the questions involved in this case. The court further finds that the said Ohio suit was not a real adversary suit, and that no counsel appeared in said cause, except counsel for the plaintiff, who also appeared as counsel for some of the defendants, and the court finds that said counsel made no defense for said defendant and did not in good faith defend this suit, and could not in good faith appear as counsel for both plaintiff and defendant, and the court from all the above facts finds that said suit and said judgment is a mere pretense and sham and make believe, and that the same is fraudu-

lent and utterly void and of no force and effect whatever. The court further finds that said judgment is not entitled to full faith and credit in this suit or any other suit or entitled to any faith or credit whatever in this suit or any other suit, and the court declines to give same any faith, credit, or consideration whatever, and particularly the court finds and orders that said judgment is in no way binding or enforceable against Russell Miller, executor, Agnes M. Yingling, Emma Miller or Frances Catherine Yingling, all of whom are parties interested in this suit and all of whom have appeared, and said Russell Miller, Emma Miller, and Frances Catherine Yingling have filed answers herein adopting the petition of the plaintiff and praying for the same relief asked for in the petition of the plaintiff.

"The court finds that the will entered for interpretation herein in paragraph 8 thereof provides that if the daughter of the deceased, Frances Catherine Yingling, shall die without issue, the residue of the estate then remaining shall go to the children of the testator's brothers and sisters and the children of the brothers and sisters of his wife, and that said paragraph 8 further provides that said bequest shall take effect only under the circumstances named and not take effect until the youngest of the testator's nephews and nieces shall arrive at the age of 22 years. The court further finds that the father of the testator is yet living and that he may yet have other children, whose children would be the nephews and nieces of the testator and belong to the class named in said bequest. And the court finds that it is clearly the intention of the testator as gathered from said will to hold the corpus of his estate intact until there exists no possibility of other nephews or nieces being born, and the court finds that said paragraph suspends the vesting of said estate for a period for more than twenty-one years, nine months, after the life or lives of persons in being, and that said suspension violates the rule against perpetuities, and that said paragraph eight of said will is therefore void, inoperative, and of no effect, and that it must be vacated, set aside, and held for naught, and that the elimination of said paragraph 8 in said will destroys the general scheme and plan of the testator's disposal of his estate, and that said general scheme and plan being, therefore, destroyed, the whole will has failed as an instrument of distribution and the estate must be held to have passed as intestate property at the time of the death of the testator and to have passed to and vested in his heirs' at law under the law of the state of Oklahoma, at the time of his death. The court further finds that in the separate answer of James A. McLaughlin filed herein on March 22, 1920, he sets out, pleads, and relies upon a waiver of notice of application to probate the first will of Frank Yingling, Jr., deceased, in the probate court of Stark county, Ohio, signed by the plaintiff, Agnes Yingling. The court finds that the signature of the plaintiff, or Agnes Yingling, to said waiver was procured by the said defendant, James A. McLaughlin, by force, duress, and threats and is therefore null, void, and of no force or effect.

"Conclusions of Law.

"The court, therefore, concludes that at the time of his death, Frank Yingling, Jr., deceased, was domiciled in Pawnee, Pawnee county, Okla., and that at the same time his wife, the plaintiff herein, Agnes Yingling, resided and was domiciled at Pawnee in Pawnee county, Okla. That the judgment rendered by the court of common pleas of Stark county, Ohio, and offered in evidence by the executor herein, is fraudulent and void and is without any binding force or effect whatever on this court or any of the parties herein, and that the will, the interpretation of which is sought herein, violates the rule against perpetuities and is, therefore, invalid, void, and inoperative as a vehicle for distribution of said estate, and that the holding of paragraph 8 of said will to be void because it violates against the rule against perpetuities, destroys the scheme and plan of the testator in making disposal of his estate and renders the entire will invalid and void and inoperative for the purpose of making distribution of the estate, and that the estate of Frank Yingling, Jr., deceased, at the time of his death, passed to his heirs as intestate property according to the laws of the state of Oklahoma.

"Wherefore, it is ordered, considered, adjudged, and decreed by the court that Pawnee county, Okla., was the domicile of Frank Yingling, Jr., deceased, at the time of his death on March 5, 1919, and that the plaintiff, Agnes Yingling, at that time and for many years prior thereto resided and was domiciled at Pawnee, in Pawnee county, Okla. It is further considered, ordered, adjudged, and decreed by the court that the pretended suit of James A. McLaughlin, executor against James A. McLaughlin, executor, filed and maintained and prosecuted to judgment in the court of common pleas of Stark county, Ohio, and pleaded and offered in evidence in this case, is fraudulent, null and void, and of no binding force or effect on this court, or any of the parties appearing herein. It is further ordered, adjudged, and decreed by the court that paragraph 8 of the will of Frank Yingling, Jr., deceased, brought into this court for interpretation, violates the rule against perpetuities and is, therefore, null and void and of no force and effect, and that said paragraph 8 be and the same is hereby set aside and held for naught. It is further considered, ordered, adjudged, and decreed by the court that the holding for naught of said paragraph 8 of said will destroys the entire plan or scheme of the testator in making disposal of his estate and that the

entire will must therefore fail as a proper vehicle for the distribution of the estate of Frank Yingling, Jr., deceased, and it is further considered, ordered, adjudged, and decreed that at the time of his death, his estate passed to his heirs under the law of distribution of the state of Oklahoma.

"It is further considered, ordered, and adjudged by the court that the costs in cause No. 4616 be paid by James A. McLaughlin, executor, or by his successor.

### "Cause No. 4650.

"Issues in this cause before this court on appeal from the county court under the above number.

"The court finds that the plaintiff, Agnes M. Yingling, and the defendant, Frances Catherine Yingling, filed their duplicate petition in the county of Pawnee county, Okla., asking said court to construe the will of Frank Yingling, Jr., deceased. and to hold the same inoperative and insufficient for the distribution of the estate and to decree said estate to have passed as intestate estate to the heirs of Frank Yingling, Jr., deceased, and to determine the heirs who take said estate and praying for partial distribution of the estate and set out that Agnes M. Yingling, the widow, and Frances Catherine Yingling, the child, were the sole, legal and only heirs of Frank Yingling, Jr., deceased. To these petitions the executor, James A. McLaughlin, on January 10, 1920, answered, controverting and opposing substantially all the allegations of said petition. except the death of Frank Yingling, Jr., deceased, and the relationship of petitioners to him, and praying that said petitions for distribution be held in abeyance to await the judgment of a court of common jurisdiction as to the construction to be placed on said will and the domicile of the deceased at the time of his death.

### "Findings of Fact.

"The court finds that at the time said petitions for distribution were filed the administration of the estate had been pending for more than four months and that notice to creditors had been given for more than four months and that all claims presented and allowed had been paid or that there were sufficient funds in the hands of the executor for payment thereof, and that there was about $18,000 in cash in the hands of the executor subject to the order of the court, and that there is existing no valid reason why the same should not be distributed as ordered. As to the matters of domicile of the deceased and the construction of the will, the court here adopts his findings of facts and conclusions of law as set out under cause No. 4616 herein. The court finds that the executor on January 10, 1920, also filed a motion to correct inventory and accounting filed by him by striking therefrom an item of $11,643.43. As to this item the court finds that at the time of the death of Frank Yingling, Jr.,

deceased, he had on time certificate of deposit in the American Bank and Trust Company of Vicksburg, Miss., the said sum of $11,643.43, and that after the said James A. McLaughlin, was appointed executor of the estate of Frank Yingling, Jr., deceased, in Pawnee county, Okla., he filed in said court his bond in the sum of $40,000 to cover said item, and that he collected and received said money, and that he charged himself with the same in his inventory filed in the county court of Pawnee county, Okla., shortly after he was appointed executor, and that in his first annual settlement filed in said court on December 29, 1919, he charged himself with said item of $11,643.43. The court having heretofore under cause No. 4616 found that Pawnee, Pawnee county, Okla., was the domicile of Frank Yingling, Jr., deceased, at the time of his death, does hereby adopt said finding and make the same the court's finding herein, and having found that said will by reason of violating the rule against perpetuities is inoperative and ineffective for a vehicle of distribution of said estate, that said estate must be treated as intestate estate, here adopts said findings amplified and set out in said cause No. 4616 and here again finds that said estate passed under the law of descent and distribution of the state of Oklahoma. It being admitted in all the pleadings in this cause that Agnes M. Yingling is the widow of Frank Yingling, Jr., deceased, and that Frances Catherine Yingling is the only child of Frank Yingling, Jr., deceased, and that they are the sole, equal and only heirs of the estate of Frank Yingling, Jr., the court finds that said matters are true, and that Agnes M. Yingling and Frances Catherine Yingling are the sole and only heirs of Frank Yingling, Jr., deceased, and that they inherit his estate equally and that upon his death, his will being invalid for the distribution of his estate, the estate passed to and devolved upon them in equal shares. The court further finds and concludes that the motion to correct inventory and account filed by the executor herein is not well taken and is without merit and that the county court of Pawnee county, Okla., has primary jurisdiction to administer the estate of Frank Yingling, Jr., deceased, and that this court draws to it all the personal estate of Frank Yingling, Jr., deceased, wherever the same may be found, and that the item of $11,643.43 above mentioned should be administered and distributed by the county court of Pawnee county, Okla., and said motion to correct inventory and account is hereby in all things overruled and disallowed. The court further finds that the executor has no appealable right or interest in any of the matters involved in this appeal.

"Wherefore, it is considered, ordered, adjudged, and decreed by the court that the motion of James A. McLaughlin to correct inventory and account be and the same is hereby overruled. It is further considered, ordered, adjudged, and decreed by the court that the will of Frank Yingling, Jr., de-

ceased, violates the rules against perpetuities and is insufficient and ineffective as a vehicle for the distribution of his estate, and that his estate pass to his heirs as intestate estate. It is further considered, ordered, adjudged, and decreed by the court that his widow, Agnes M. Yingling, and her daughter, Frances Catherine Yingling, are the sole and only heirs of the estate of Frank Yingling, Jr., deceased, and that they take said estate under the law of descent and distribution under the laws of the state of Oklahoma, and it is further considered, ordered, adjudged, and decreed by this court that the decree of distribution made by the county court of the county of Pawnee, state of Oklahoma, on the 13th day of January, 1920, be and the same is hereby ratified, approved, and confirmed and declared valid and distribution of $16,000 of the funds of said estate is hereby ordered to be distributed and paid, $8,000 thereof to Agnes M. Yingling, and $8,000 ordered to be paid to Frances Catherine Yingling, shall be paid and is hereby ordered to be paid to A. G. Adams, her guardian, and to be transferred and delivered to him in the state of Texas. It is further ordered and adjudged, however, that that part of said order requiring the executor, James A. McLaughlin, to make distribution thereof be set aside because of a subsequent order of the county court requiring him to deliver the assets of said estate to his successor, Russell Miller, who has been appointed executor and who has duly qualified as such, and it is ordered that said decree of distribution be carried out and executed by the said Russell Miller, executor, when and as soon as he comes into possession of said estate. It is further considered, ordered, adjudged, and decreed by the court that the costs of the appeal in this cause appearing as No. 4650 in this court be and the same are to be paid by J. A. McLaughlin, executor, or his successor.

"Cause No. 4657.

"In this cause the court finds that paragraph 9 of the will provides that Russell Miller shall supersede James A. McLaughlin as executor of the will of Frank Yingling, Jr., deceased, upon attaining his majority. That after the death of Frank Yingling, Jr., deceased, the said James A. McLaughlin went to the home of Russell Miller in the state of Texas and procured the consent of the said Russell Miller and of Emma Miller and of Frances Catherine Yingling, for the appointment of James A. McLaughlin as executor of the last will and testament of Frank Yingling, Jr., deceased, in Pawnee county, Okla., but at said time made a promise in writing, under oath, that he would resign as such executor in favor of Russell Miller at any time upon the request of Russell Miller. The court further finds that Russell Miller made application for the appointment of himself as executor, requested the said James A. McLaughlin to resign, and that notwithstanding the terms and provisions of the will and notwithstand-

ing the terms and provisions of his written promise under oath, the said James A. McLaughlin, without right, refused and failed to resign in favor of him, the said Russell Miller. The court further finds that Russell Miller made application in due form of law for the removal of the said James A. McLaughlin as executor and tendered his bond as such executor in the sum of $4,000, being the amount of the bond of the said James A. McLaughlin, and that the court in compliance with the terms and provisions and requirements of said will removed the said James A. McLaughlin as executor and appointed the said Russell Miller and approved the said bond of said Russell Miller, and that the said Russell Miller had filed his oath, and letters testamentary have issued to him, and that he is now the duly and legally appointed and qualified executor of the last will and testament of Frank Yingling, Jr., deceased, in Pawnee county, Okla., and that he is entitled to the custody, control, and possession of the estate of Frank Yingling, Jr., deceased. The court further finds that the said James A. McLaughlin appealed from the order of said court removing him and appointing his successor in his capacity as executor in both Ohio and Oklahoma, and without giving any bond, and the court further finds that the said executor willfully and in violation of the laws of the state of Oklahoma, has failed, neglected, and refused to surrender to and pay over to his successor the said estate, and has failed to deliver and render to his said successor the papers, muniments of title, and evidence of debt belonging to said estate. The court further finds that such an appeal or attempted appeal does not stay the execution of the judgment and that said estate should have been immediately upon said order surrendered, paid over, and delivered by the executor to his successor. The court further finds that the said James A. McLaughlin should be ordered and required to surrender, pay over, and deliver to his successor, Russell Miller, all of the money, property, papers, books, muniments of title, evidence of indebtedness, and other effects, papers, instruments belonging to the estate of Frank Yingling, Jr., deceased, within fifteen (15) days from or after the date of this decree.

"Wherefore, it is considered, ordered, adjudged, and decreed by the court that the order of the county court removing James A. McLaughlin as executor of the last will and testament of Frank Yingling, Jr., deceased, be and the same is hereby ratified, approved, confirmed, and declared valid, and the appointment of Russell Miller as such executor and his qualification be and the same is hereby ratified, approved, confirmed, and declared valid, and the said James A. McLaughlin is hereby ordered and required to pay over, surrender to, and deliver up to his successor Russell Miller within (15) days from and after the date of this decree all of the money, papers, property, books, evidence of indebtedness, muniments of title,

and other instruments and everything of value or everything relative of value now in his hands, and it is further · considered, ordered, and adjudged that this order and decree for the delivery of the property and assets of said estate by the said James A. McLaughlin to his successor is and shall not be superseded in any way, but shall be complied within the time and in the manner herein specified. It is further ordered and decreed by the court that the costs in the appeal in this case No. 4657 be and the same are hereby ordered paid by J. A. McLaughlin.

"It is further ordered, adjudged, and decreed that a true copy of this judgment and decree be filed in the county court of Pawnee county, Okla., in case No. 794 for the information and guidance of the county court.

"Redmond S. Cole, District Judge."

The plaintiffs in error have set out numerous assignments of error in their petition, but counsel in their brief discuss the same under the following propositions, they say:

"For the purpose of this brief, these assignments of error will be argued under the following propositions:

"(1) The domicile of Frank Yingling, Jr., deceased, was at Massillon, Stark county, Ohio, at the time of his death, and his estate should be administered there, and the money on deposit in Vicksburg, Miss., at the time of his death, is a part of his estate under the jurisdiction of the Ohio court and should be administered there. (Covered by 6th, 7th, 8th, 12th, 13th, 14th, 18th and 19th assignments of error.)

"(2) Russell Miller was not, under the will or law, entitled to be appointed executor of the will of Frank Yingling, Jr., deceased, to succeed plaintiff in error. (Covered by 11th and 12th assignments of error.)

"(3) The judgment of the Ohio courts was res adjudicata as to the parties in this proceeding and they are estopped by said judgment. There was also a defect of parties in this proceeding. (Covered by 2nd, 6th, 7th, 10th, 15th, 18th, and 19th assignments of error.)

"(4) Plaintiff in error, James A. McLaughlin, has an appealable right and interest in the matters in the appeals from the orders of the county court of Pawnee county, Okla. (Covered by the 16th assignment of error.)

"(5) The will in question is valid, and should be sustained and enforced. (Covered by the 2nd, 3rd, 6th, 7th, 9th and 19th assignments of errors.)

"(6) The court committed error in refusing the offer of proof by E. G. Gray. (Covered by 5th assignment of error.)

"(7) The motion for new trial should have been sustained. (Covered by 1st assignment of error.)"

As to the first three of these propositions, it is sufficient to say they embrace the questions of the jurisdiction of the county and district courts of Pawnee county to hear and determine all questions involved in the three cases, that is to say, the question to probate the will in question in the county court commenced by the plaintiff in error, James A. McLaughlin, which jurisdiction was invoked by himself in the capacity of executor of the will; and under an agreement made between himself and Agnes M. Yingling, the widow of the deceased, procured an order of the county court of Pawnee county on the 7th day of July, 1919, admitting the will to probate, granting to himself letters testamentary; in which agreement it was stipulated that in accordance with said finding and decree of the above named court, holding that said court has original primary jurisdiction of said state, said above named court may proceed to administer said estate and examine original primary jurisdiction of the same.

Moreover, the county court took a great deal of testimony upon the hearing, from which the court found the testator, Frank Yingling, died in Pawnee county, Okla., on March 5, 1919, at which time he was a resident and domiciled in Pawnee, Pawnee county, Okla., that the bulk of his estate of $40,000 to $50,000 was in Pawnee county, Okla., and that the same was the domicile of the wife, Agnes Yingling, at the time of the death of Frank Yingling, the deceased, where she had continuously resided with her husband from about September, 1918; and that she had not resided in Massillon, Stark county, Ohio, for about a year and one-half prior to January, 1920; and that the pretended service of summons on her, by leaving the same at her alleged place of residence in the case of McLaughlin vs. McLaughlin, brought in the court of common pleas in Stark county, Ohio, was null and void, and conferred no jurisdiction whatever on said court of common pleas in Stark county, Ohio, and said court had no jurisdiction to render a personal judgment against her by reason of said service.

The court further found that in attempting to procure service on the plaintiff herein in that case the plaintiff, James A. McLaughlin, executor, made oath that the plaintiff herein, Agnes Yingling, was a nonresident of the state of Ohio, and that service of summons could not be had upon her in said state; and the court further found that said affidavit was true.

The court made similar findings of fact in the case of the application of Agnes Ying-

ling in the county court of Pawnee county to be appointed administratrix of the estate of Frank Yingling, Jr.; as well as in her suit in which she was joined by Frances Catherine Yingling, the daughter of the deceased, Russell Miller, executor, and Mrs. Emma Miller in the district court of Pawnee county, to have the will of Frank Yingling, deceased, construed. The findings of the county court were approved by the district court.

We have examined the evidence contained in the record, and find that such findings of the trial court are not clearly against the weight of the evidence, but, on the contrary, such findings are amply supported by the evidence and amply support the judgment of the trial court adjudicating the questions involved, and that the judgment and such adjudication is binding upon this court. Interstate Building & Loan Company et al. v. Oklahoma City et al., 84 Okla. 227, 203 Pac. 172; Swan v. Duncan, 78 Okla. 305, 190 Pac. 678; Parker v. Tomm, 78 Okla. 103, 188 Pac. 1074.

These findings dispose of the questions raised in propositions Nos. 1 and 2, supra, as well as proposition 3, that "The judgment of Ohio courts was res adjudicata as to the parties in this proceeding and they are estopped by said judgment."

As to proposition 4, that "plaintiff in error, James A. McLaughlin has an appealable right and interest in the matters in the appeals from the orders of the county court of Pawnee county, Okla.," it is sufficient to say that such right has been recognized by this court in considering such appeal on its merits, and so it is not necessary to give further consideration to that proposition.

The plaintiffs in error's fifth proposition, is, "The will is valid and should be sustained and enforced."

The trial court found the 8th paragraph of the will was invalid for the reason that the same violates the rule against perpetuities and is thereby void. Section 32, art. 2, of the Constitution provides that "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed. * * *" Section 8 of the will is as follows:

"Eight. In the event that my said daughter Frances Catherine should die without issue and no other children should be born to myself and the said Mrs. Emma Miller, or in the event other children should be born to us the said Mrs. Emma Miller and myself and afterwards die without issue and all the children of myself and the said Mrs. Emma Miller have died without issue and there still remains a remnant of my estate,

I will and bequeath the same to the children of my brothers and sisters and the children of the brothers and sisters of my wife, adopted children and step-children not included in this bequest. This bequest to take effect only under the circumstances named and not to take effect until the youngest of my nephews and nieces arrive at the age of twenty-two years."

In 30 Cyc. 1468, subd. 2, the author in discussing the origin and development of the rule states:

"The word 'perpetuity' appears in the reports as early as 1595. In the following century the word was used by the courts with various meanings, including: (1) An inalienable estate tail; (2) an indestructible remainder to a person not in being; (3) an indestructible executory devise contingent on a failure of issue."

The author on page 1469 illustrates the rule as follows:

"The Earl of Arundel, having three sons, conveyed a long term to trustees, in trust for his second son, and the heirs male of his body; with a proviso that, if his first son should die without issue male, in the lifetime of the second son, the term should be held in trust for the third son. The first son did die without issue male in the lifetime of the second son. Was this limitation over to the third son good? It was a limitation to take effect upon a failure of issue, and therefore bad as a perpetuity within the earlier authorities; but the chancellor, Lord Nottingham, held the limitation good on the ground that it must take effect, if at all, within the life of the second son. It was established, he reasoned, that a limitation of a term to A., a living person, for life, and then to B. on A.'s death, was good. If a limitation over on A.'s death was not regarded as a perpetuity, then any limitation over which must take effect at or before A.'s death ought not to be so regarded. Here was a decision based squarely on the idea that whether a limitation over is to be regarded as a perpetuity or not depends on the time within which such limitation must take effect. Lord Nottingham held that a limitation might be made to take effect on a contingency which must happen, if at all, within a life in being, but he refused to try to define precisely the time within which a limitation over must take effect, leaving this to be worked out by future cases. Lord Nottingham's decision was affirmed in the House of Lords, has never since been questioned, and is the foundation of the modern rule against perpetuities."

Counsel for plaintiffs in error in discussing the eighth paragraph of the will state as follows:

"The question, then, is whether this bequest over vests at the death of Frances Catherine without issue, or whether it does

not vest until the youngest of the beneficiaries arrives at the age of twenty-two (22) years. If the former, the gift over is valid; if the latter, it is void."

Counsel argues in support of the foregoing that the gift in the case at bar vests in the nieces and nephews upon the death of Frances Catherine without issue, and that the time of payment or distribution only is delayed until the youngest of such nieces and nephews arrive at twenty-two (22) years of age.

In answer to the foregoing, counsel for defendants in error state in their brief as follows:

"It is our contention that since the gift over is to a class and since the time of payment or distribution of the gift over to that class is set at some future date, there can be no indefeasible vesting until that date arrives, for the class is held open to receive any members that may be born up to the day and date of payment and distribution, and, since there can be no indefeasible vesting, as concerns the rule against perpetuities, there can, in fact, be no vesting until the day and date is reached for such payment and distribution."

Section 8410, Revised Laws 1910, provides that:

"A condition precedent in a will is one which is recognized to be fulfilled before a particular disposition takes effect."

In paragraph 8 of the will, wherein the testator bequeaths the residue of his estate, if any, to the nephews and nieces, the language used is, "This bequest to take effect only under the circumstances named and not to take effect until the youngest of my nephews and nieces arrive at the age of twenty-two years." The circumstances named are that, "In the event that my daughter Frances Catherine should die without issue and no other children should be born to myself and the said Mrs. Emma Miller, or in the event other children should be born to us, the said Mrs. Emma Miller and myself, and afterwards die without issue and all of the children of myself and the said Mrs. Emma Miller have died without issue." After stating these circumstances the conjunction "and" is used, joining the first above quotation with the circumstances.

It seems quite clear to us that the death of Frances Catherine without issue, that no other children be born, or if born should die without issue, and that the youngest nephew or niece should attain the age of 22 years, are conditions precedent within the meaning of the statute, supra, and the language used

by the testator, supra, and that each, every, and all of these conditions are required to be fulfilled before the disposition to the nephews and nieces takes effect.

In addition to these three contingencies found in paragraph 8 of said will, there are still other contingencies found in the will which, when read in connection with paragraph 8, add still other contingencies which must be met before the nieces and nephews are to take. In paragraph 2 of said will the testator provides an allowance to his wife during her life, such an allowance to be paid out of the corpus of the estate, or at least revenues derived from said estate; and in paragraph 3 of said will the testator provides for an allowance to Emma Miller during her natural life, such an allowance to be paid out of the corpus of the estate or revenue derived therefrom. Therefore, should his daughter Frances Catherine die without issue before testator's wife should die or before Mrs. Emma Miller should die, then and in that event, the nieces and nephews cannot take until the wife dies or until Mrs. Emma Miller dies, for the wife and Mrs. Emma Miller are to be meagerly provided for out of the estate during their natural lives and before the nieces and nephews can take the widow and Mrs. Miller must die—should all the nieces and nephews die before the widow or Mrs. Emma Miller they are to receive nothing.

The language used by the testator in paragraph 8 as to the circumstances under which the nieces and nephews are to take is as follows:

"This bequest to take effect only under the circumstances named and not to take effect until the youngest of my nephews and nieces arrive at the age of 22 years."

Thus it is seen that in the event Frances Catherine dies leaving issue, or if any other children born of the testator and Mrs. Emma Millie die leaving issue, the nieces and nephews are not to take under the will; and the language employed by the maker of the will is "to take effect only," etc. And the same language is employed in determining the lodgment of the bequest upon the nieces and nephews as concerns their age, that is, the maker of the will again says the bequest is not "to take effect" until the youngest of my nephews and nieces arrive at the age of 22 years. The expression "to take effect," first used, beyond question means that before the nieces and nephews take, certain conditions and circumstances must exist, and when the same language is **used as concerns** the effectiveness of the

bequest relating to the ages of the nieces and nephews, there can be but one reasonable, wholesome conclusion, and that is, where the same and identical term is used in both instances, the same identical meaning is intended, which is that the nieces and nephews are to take nothing unless Frances Catherine and other children that may be born of the deceased, and Emma Miller die without issue, and then not until the youngest of the nieces and nephews arrive at the age of 22 years.

It seems clear that the statute, supra, is declaratory of the rule at common law. Also, that the postponement of time until the youngest nieces and nephews arrive at the age of 22 years pertains not only to the date of payment and distribution, but to the date when the gift over to the nieces and nephews is to vest, as is the clearly expressed desire of the testator. And also, if it be true, as counsel contend, though we think otherwise that the estate vested in the nephews and nieces upon the death of Frances Catherine without issue, such is not an indefeasible vesting, but it is a defeasible vesting to the extent and so that the nephews and nieces born after the testator's death and before the youngest of such nephews and nieces arrive at the age of 22 years may be added to the class or to the list of nephews and nieces who are to take under the will.

Such was the holding in Minnig v. Batdorff, 5 Pa. St. 503, wherein it was held:

"When there is an intermediate gift to children, those only living at the testator's death will take; but it is now settled that where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest or of any other person, the limitation will embrace, not only the objects living at the death of the testator, but all who shall subsequently come into existence before the period of distribution." Haskins v. Tate, 25 Pa. St. 249.

In the leading case of Leake v. Robinson, 2 Merv. 363, it was said:

"Whenever a testator gives to a parent for life, remainder to his children, he does mean to include all the children such parent may at any time have." Boughton v. Boughton, 1 H. L. Cas. 406; Hall v. Hall, 123 Mass. 120; Fosdick v. Fosdick, 88 Id. 41; Coggin's Appeal, 124 Pa. St. 10, 10 Am. St. Rep. 568-570; Ridgway v. Underwood, 67 Ill. 119; Blatchford v. Newberry, 99 Ill. II; Mather v. Mather, 103 Ill. 607; Schuknecht v. Schulz et al., 212 Ill. 43, 72 N. E. 38, 39; 40 Cyc. pp. 1477-1479, 1480, 1481.

The following authorities support the rule that such interest becomes vested only at the time of distribution: Quinlan et al. v. Wickman et al., 233 Ill. 39, 84 N. E. 39; Wilber v. Wilber, 60 N. Y. Supp. 1064; Moore v. Smith, 9 Watts, 403; Tiffany, Modern Law of Real Property, 120b; Fearne, Contingent Remainders, p. 216; Williams, Real Property, 267; 4 Kent, Com. 203.

In the foregoing texts the authors discuss the difference between vested remainder and a contingent remainder. In a note to Thomas v. Thomas (Mo.) 73 Am. St. Rep. 431-32, the rule is thus stated:

"In order that a vested share which is not come into possession until a future time, shall escape the consequences of the rule against perpetuities, the vesting must be indefeasible. * * *

"In enforcing the rule against perpetuities it is a firmly established principle that every future limitation of an estate is void as too remote unless it is apparent that it must take effect and vest, if at all, within the period allowed by the rule. The test therefore by which to ascertain whether a limitation over is void for remoteness is very simple. It does not depend on the character or nature of the contingency or event on which it is to take effect, for these may be varied to any extent But it turns on the single question, whether the prescribed contingency or event may not arise until after the time allowed by law within which the gift over must take effect. Thus where a breach of condition on which a limitation depends, if it occurs at all, must occur within the period allowed by the rule, it will be upheld. It is not sufficient that the future estate may by possibility become vested within the period allowed by the rule against perpetuities, or even that it will probably become vested in such period. If it may possibly happen beyond the established time limits or if there is left any room for uncertainty or doubt on the point, the limitation is void. If a future limitation may not by possibility take effect within the prescribed period, it cannot be made good by subsequent events. In other words, the validity of the future estate under the rule against perpetuities depends not on what actually happens after the time at which the rights of the parties are fixed, but on what may happen as viewed at the time when the deed or will creating them takes efect. Thus it makes no difference that one to whom a future interest is given happens to be born within the period allowed by the rule if he might have been born beyond that period." 21 R. C. L., pp 289-90.

"Apart from a resort to lives in being as the standard for measuring the period of time for the postponement of the vesting of a future estate, the only definite period permitted by the rule against perpetuities is a term not exceeding twenty-one years. This term of twenty-one years is not dependent on the existence of the minority

of any person, but is a period in gross, and a testator may probably postpone the vesting of a future interest created by his will for a period of time not exceeding twenty-one years in addition to a life or lives in being; but he must not exceed this limitation, and a provision that thirty years after the testator's death an estate is to be given to his nephews and nieces, or their heirs, and if not heirs, to be divided equally among the surviving heirs, would be void. Similarly it has been decided that a bequest in trust for the benefit of testator's daughter during life and to distribute the remainder among her children when the youngest reaches the age of thirty years, violates the rule of perpetuities because there is a possibility of the distribution being delayed more than twenty-one years after the death of the daughter. For the same reason a gift which is made to all the testator's grandchildren, including those who may be born after his death, to take effect ten years from the time when the youngest grandchild shall have become of age, violates the rule." 21 R. C. L., p 293.

"The rule against perpetuities is not a rule of construction, but a positive mandate of law to be obeyed irrespective of the question of intention. The proper procedure is to determine the true construction of the will or deed involved, just as if there was no such thing in existence as the rule against perpetuities, and then to apply the rule rigorously, in complete disregard of the wishes and intentions of the testator or grantor. It has been said that the rule against perpetuities, like the rule in Shelley's Case, always defeats the testamentary intention, and that the court is free to disregard such provisions of the will as violate it although to do so violates the testator's intention as determined by the court." 21 R. C. L., pp. 294-5.

We think the trial court was correct in holding that paragraph 8 of the will offends the law against perpetuities, but we think that the will is absolutely void as to the surviving wife, Agnes M. Yingling, in that it bequeaths more than two-thirds of his property away from the wife of the testator. which is prohibited by the proviso in section 11224, Compiled Laws of 1921, which is as follows:

"Provided that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband. * * * "

This statute was quoted with approval by this court in Walker et al. v. Brown, 43 Okla. 144, 141 Pac. 681; Bacus v. Burns et al., 48 Okla. 285, 149 Pac. 1115, and was construed and given full force and effect by this court in the case of Hill v. Buckholts et al., 75 Okla. 196, 183 Pac. 42, wherein it was stated in syllabus 1 as follows:

"Under section 8341, Rev. Laws 1910, husband and wife while married each becomes the forced heir of the other to the extent of one-third of the property owned by each, respectively, which interest cannot be bequeathed by the owner from said heir, and where the property is real estate, the estate of the owner therein is meant, whether it be the fee or a lessor estate. * *";

Finding no reversible error, the judgment of the trial court is affirmed.

KANE,, NICHOLSON, KENNAMER, and COCHRAN, JJ., concur.